Lizzie McDONALD, Plaintiff,

v.

PROFESSIONAL INSURANCE CORPORATION; et al., Defendants.

Civil Action No. 96–T–205–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 19, 1996.

Jere L. Beasley, Rhon E. Jones, Thomas James Methvin, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, for Lizzie McDonald.

Bruce F. Rogers, Bainbridge, Mims, Rogers & Smith, Birmingham, AL, for Professional Insurance Corporation.

Nicholas J. Cervera, Cervera & Ralph, Troy, AL, for William Douglas Beck.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiff Lizzie McDonald filed this lawsuit in the Circuit Court of Pike County, Alabama, charging defendants Professional Insurance Corporation and William Douglas Beck with state-law claims of fraud, negligence, and recklessness in the sale of an accident insurance policy and in the collection of premiums for the policy. Professional Insurance and Beck removed this lawsuit from state to federal court, contending that McDonald's state-law claims are "completely preempted" by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461, commonly known as ERISA, and thus that this court has removal jurisdiction based on 28 U.S.C.A. §§ 1331, 1341, and 29 U.S.C.A. § 1132. Now before the court is McDonald's motion to remand.

### I.

The facts in this case, as garnered from the affidavits submitted by the parties, are as follows:

● In November 1975, McDonald purchased an accident insurance policy from Professional Insurance and its agent, Beck. At that time, McDonald was an employee of the Organized Community Action Program, also known as OCAP. She paid part of the premium and OCAP paid the rest.

● In 1977, OCAP terminated its relationship with Professional Insurance and chose another insurance company to sponsor the insurance plan for its employees. McDonald elected not to go with OCAP's new insurer and, instead, maintained her accident policy with Professional Insurance. From that point on, she paid all of her premiums herself.

● In 1985, McDonald retired from OCAP. She did not receive any type of pension or retirement from her employer. She also continued to make the full premium payments on her policy with Professional Insurance.

● In 1995, McDonald fell, breaking her foot and dislocating her shoulder. McDonald contacted Professional Insurance and was told that she was not covered. Professional Insurance offered to refund her premiums since her retirement in 1985.

● In January 1996, McDonald filed this lawsuit in state court charging that Professional Insurance and Beck fraudulently failed to disclose to her that her policy would terminate when she reached the age of 65 and fraudulently continued to collect premiums from her after her policy had terminated.[1]

### II.

The party seeking removal has the burden of establishing federal jurisdiction. *Sullivan v. First Affiliated Securities, Inc.*, 813 F.2d 1368, 1371 (9th Cir.), *cert. denied*, 484 U.S. 850, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987); *Stone v. Williams*, 792 F.Supp. 749 (M.D.Ala.1992). "Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand." *Brech v. Prudential Ins. Co. of America*, 845 F.Supp. 829, 831 (M.D.Ala.1993); *see also Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Butler v. Polk*, 592 F.2d 1293, 1296 (5th Cir.1979).[2]

ERISA preempts all state-law claims that "relate to any employee benefit plan." 29 U.S.C.A. § 1144(a). ERISA recognizes two employee plans, "employee welfare benefit plans" and "employee pension benefit plans." McDonald contends that, although her accident policy when purchased in 1975 was part of an ERISA plan, the policy ceased to be part of the plan when, in 1977, OCAP

---

**1.** In her brief, McDonald contended that the fraud was that Professional Insurance and Beck failed to tell her that her policy would terminate because she was no longer employed. However, in her complaint, she alleges that the fraud was that they fraudulently failed to tell her that her policy would terminate when she turned 65.

**2.** The Eleventh Circuit Court of Appeals has adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

terminated its relationship with Professional Insurance and entered into an arrangement with another insurer. Professional Insurance and Beck correctly observe that, in *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341 (11th Cir.1944), the Eleventh Circuit Court of Appeals held that the "conversion" of a group plan into an individual plan did not defeat ERISA coverage. *Id.* at 1346–47.

*Glass* is not applicable to the facts here for two reasons. First, in *Glass*, the court was careful to note that the "conversion" was from "a *group* policy consisting of actively employed ... employees" to a "*group* policy of ex-[]employees." *Id.* at 1346 (emphasis added). There, the plaintiff's "insurance was part of a group policy whose beneficiaries all had one thing in common—they had enrolled as 'employees' in the original ERISA plan." *Id.* The court expressly reserved reaching whether a conversion "for an individual as opposed to a class of beneficiaries," would fall within ERISA coverage. *Id.* See, e.g., *Mimbs v. Commercial Life Ins. Co.*, 818 F.Supp. 1556 (S.D.Ga.1993).

Second, and more importantly, McDonald's policy did not really suffer a conversion in the sense usually discussed in case law. In McDonald's case, OCAP decided to cease its relationship with Professional Insurance, while McDonald decided to continue that relationship. OCAP, therefore, essentially dissolved the ERISA plan with Professional Insurance and established a new plan with another insurer. The ERISA plan with Professional Insurance ceased to exist. McDonald continued her employment with OCAP, but OCAP terminated the ERISA plan with Professional Insurance.

In contrast, in *Glass* and similar cases, the plaintiff ceased employment but the ERISA plan with the same insurer continued to exist. The plaintiff's policy was simply converted to an individual policy with that insurer. In those cases, unlike here, the ERISA plan with the insurer did not cease to exist. *See, e.g., McCale v. Union Labor Life Ins. Co.*, 881 F.Supp. 233, 235–36 (S.D.W.Va. 1985); *but see Reynolds v. Massachusetts Cas. Ins. Co.*, 900 F.Supp. 915, 923–24 (E.D.Tenn.1995).

Because the ERISA plan with McDonald's insurance company has long ceased to exist, because McDonald's claims arose after her employer's termination of the ERISA plan with her insurance company, and because her claims involve her entitlement to benefits under the policy she individually continued to maintain with the insurance company, her claims against her insurance company are not preempted by ERISA.

■ In any event, even if McDonald's current relationship with Professional Insurance could be viewed as falling within ERISA's purview, ERISA would not preempt her state-law claims against Beck. In *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715 (11th Cir. Aug. 19, 1996), the en banc court overruled circuit law and held that ERISA did not preempt claims against an "independent insurance agent and his agency for fraudulent inducement to purchase and negligence in processing [an] application for an ERISA-governed insurance plan." *Id.* at 716. The Eleventh Circuit explained that an "insurance agent and agency" are not ERISA entities. *Id.* at 722. "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Id.* "Allowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA.... To immunize insurance agents from personal liability for fraudulent misrepresentation regarding ERISA plans would not promote this objective." *Id.* at 723. It is unclear whether Beck is an independent agent. However, because Professional Insurance and Beck have not indicated otherwise and because, as stated, they bear the burden of establishing removal jurisdiction with all doubts resolved in favor of remand, the court will assume that he is.

The court emphasizes, however, that the above conclusions have been reached based on limited evidence, mainly by affidavit and without the benefit of live testimony at a trial, and go only to the question of the subject-matter jurisdiction of this court and not to the merit of the defense that McDonald's state-law claims are preempted by ERISA. This court's conclusions are therefore not binding on the state court. Profes-

sional Insurance and Beck may still pursue the ERISA-preemption defense after remand to state court, and, indeed, after further development of the facts, including an evidentiary hearing, the state court may still find the defense has merit. *Glasser v. Amalgamated Workers Union Local 88*, 806 F.2d 1539, 1540 (11th Cir.1986) (per curiam); *see also Soley v. First National Bank of Commerce*, 923 F.2d 406, 408–09 (5th Cir.1991). For example, the state court, after hearing live testimony, may reach a different conclusion with regard to the factual circumstances under which McDonald obtained an individual policy with Professional Insurance and a different conclusion with regard to the relationship between Beck and Professional Insurance.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that the motion to remand filed by plaintiff Lizzie McDonald on March 6, 1996, is granted, and that pursuant to 28 U.S.C.A. §§ 1447(c) & (e), this cause is remanded to the Circuit Court of Pike County, Alabama.

It is further ORDERED that all other pending motions, including defendants' motion to strike preempted state-law claims and motion to strike jury demand, both filed on February 20, 1996, are left for disposition by the state court after remand.

The clerk of the court is DIRECTED to take appropriate steps to effect the remand.