**Mona GATEWOOD, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. 99–1087–CIV–T–24(F).**

United States District Court, M.D. Florida, Tampa Division.

Nov. 29, 1999.

---

Paul S. Kimsey, Kimsey & Associates, P.A., Tampa, FL, for Mona Gatewood, plaintiff.

Andres Gonzalez, Law Office of Steven M. Ziegler, P.A., Hollywood, FL, for Life Insurance Company of North America, defendant.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court on plaintiff's Motion to Remand to State Court (Doc. No. 10). Defendant has filed a response in opposition (Doc. No. 15).

### I. *Background*

The plaintiff in this action was employed by Friedman's Jewelers ("Friedman's") from 1992 until May 28, 1997. During her employment, plaintiff was covered under a group insurance plan ("the Plan") that afforded health, life, and disability insurance benefits to her. The parties in this action do not dispute that this group plan is governed by the Employment Retirement Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). After ceasing to be employed with Friedman's, plaintiff continued to be covered under the Plan for several months. During that time, half of plaintiff's policy premiums were paid by Friedman's.

On or about August 13, 1997, Friedman's sent plaintiff a letter informing her of her right to convert her insurance benefits to individual policies. On October 13, 1997, plaintiff filed a claim for long term disability benefits with the defendant. On October 29, 1997, Friedman's sent plaintiff another letter informing her of her right to convert her insurance benefits to individual policies and asking plaintiff to reimburse Friedman's for policy premiums that it had paid on plaintiff's behalf for the months of September and October, 1997. This letter also informed plaintiff that her coverage under the Plan would be canceled on October 31, 1997. *See* Doc. No. 10, Exhibit C. On November 1, 1997, plaintiff's individual long term disability policy became effective.

In her motion to remand, plaintiff contends that this Court lacks subject matter jurisdiction to hear this case due to the

fact that the issues in dispute involve coverage under her individual disability policy. Plaintiff states that her converted individual policy is not covered under ERISA. Defendant counters by arguing that plaintiff's converted individual policy is still within ERISA's purview. However, defendant alternatively argues that even if plaintiff's individual policy is not covered under ERISA, the coverage dispute in question relates to the group plan under which plaintiff was covered prior to the effective date of her individual plan.

## II. *Discussion*

### (A). *ERISA and Plaintiff's Individual Disability Plan*

■ Defendant's first argument against remand is that even if this case arises from a coverage dispute under plaintiff's converted individual plan, that converted plan is still governed by ERISA. *See* Doc. No. 15 at 3. The issue of whether an individual insurance policy is removed from the scope of ERISA when it is converted from an employer's group plan is a well-contested issue within the federal courts. Some courts have found that an individual policy that is converted from a covered group plan remains under ERISA's purview, while other courts have held that a converted policy is too far removed from the original group plan, thus foreclosing ERISA preemption. *Compare Painter v. Golden Rule Ins. Co.*, 121 F.3d 436 (8th Cir.1997); *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404 (9th Cir.1995); *Bowers v. Blue Cross Blue Shield of Georgia*, 16 F.Supp.2d 1374 (N.D.Ga.1998); *Beal v. Jefferson–Pilot Ins. Co.*, 798 F.Supp. 673 (S.D.Ala.1992); *with Demars v. CIGNA Corp.*, 173 F.3d 443 (1st Cir. 1999); *Mizrahi v. Provident Life and Accident Ins. Co.*, 994 F.Supp. 1452 (S.D.Fla. 1998); *Loudermilch v. New England Mutual Life Ins. Co.*, 942 F.Supp. 1434 (S.D.Ala.1996); *Mimbs v. Commercial Life*

*Ins. Co.*, 818 F.Supp. 1556 (S.D.Ga.1993). While recognizing that this issue is "one of first impression in this circuit", the Eleventh Circuit refused to address this issue in *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341 (11th Cir.1994). Instead, the court in *Glass* held that where an employee had removed coverage from an active employee group plan to an inactive employee group plan, ERISA continued to apply to the inactive group policy. *See Glass*, 33 F.3d at 1346–47. Given the lack of binding precedent on this issue, this Court finds the reasoning set forth in *Mimbs* and *Demars* to be persuasive.

In *Mimbs*, the court drew a distinction between claims arising from the right to convert a policy and claims arising from the converted policy itself. *See Mimbs*, 818 F.Supp. at 1561. While the right to convert a group policy into an individual policy may be covered by ERISA, the actual converted policy itself does not have an "integral connection" with the ERISA plan giving rise to the employee's right to convert. *See id.* at 1562. In other words, "the concerns behind ERISA preemption are not implicated by state-law claims arising from obligations incurred under the conversion policy itself." *Id.*

In *Demars*, the First Circuit expanded on the logic set forth in *Mimbs*. Speaking to the relationship between an ERISA group policy and a converted individual policy, the court noted that "there is obviously a type of 'but for' relationship linking [the conversion policy] and the [ERISA plan] [b]ut 'infinite relations cannot be the measure of preemption.'" *Demars*, 173 F.3d at 445. Instead, the court found that ERISA preemption of a converted policy has to be measured by factors which serve the legislative purposes of the ERISA statute. *See id.* at 446–47. Specifically, the court noted that "what matters for ERISA purposes is not the nature of the conversion policy but rather the nature of the employer's ongoing administrative and fi-

nancial ties to the policy." *Id.* at 450. "If no such ties exist, the policy should not be subject to ERISA regulation." *Id.*

In the case sub judice, the converted individual long term disability policy in question was not administered by plaintiff's employer, and the premiums for that policy are paid by the plaintiff. *See* Doc. No. 10, Exhibits B, C, and D. In other words, plaintiff's employer had no "ongoing administrative and financial ties to the policy." *Demars,* 173 F.3d at 450. Thus, plaintiff's converted individual policy is not subject to ERISA preemption.

(B). *The Effective Date of Plaintiff's Individual Policy*

■ Although plaintiff's individual long term disability policy is not preempted by ERISA, that policy was not effective until November·1, 1997. *See* Doc. No. 10, Exhibit D. Until that time, plaintiff was covered under the group plan provided by her employer. *See* Doc. No. 10, Exhibit C (stating that "[Friedman's] ha[s] canceled your coverage from the group plan effective 10/31/97."). As noted above, there is no dispute that the Friedman's group plan is covered under ERISA. It is also undisputed that plaintiff filed her claim for long term disability benefits on October 13, 1997. Therefore, the claim at issue in this lawsuit is subject to ERISA preemption because it was filed under Friedman's group policy and not under plaintiff's individual policy which became effective November 1, 1997. Plaintiff argues that since Friedman's sought and received reimbursement for premiums paid in September and October 1997, the effective date of her individual policy should be September, 1997. *See* Doc. No. 10 at 7. However, in a letter dated October 29, 1999, Friedman's stated the following:

> Per my letter to you dated 8/13/97, you need to contact CIGNA about converting you life and disability policies into an

individual continuance. Friedman's paid the premium for you through the end of September, 1997, so there would not be a lapse in coverage. You need to reimburse Friedman's for the September and October life premium, $3.08, and the September and October long term disability premium, $9.34, a total of $24.84.

Doc. No. 10, Exhibit C. The mere fact that plaintiff was asked to reimburse a sum to Friedman's for policy premiums does not remove the fact that plaintiff did not convert her disability policy to an individual plan until the November 1, 1997 effective date. Therefore, the claim that is the subject of this lawsuit was filed prior to the effective date of plaintiff's converted individual policy, and that claim is subject to ERISA preemption.

Accordingly, it is ORDERED AND ADJUDGED that plaintiff's Motion to Remand to State Court (Doc. No. 10) is DENIED.