# United States Court of Appeals
## For the First Circuit

No. 03-2112

THE PAUL REVERE LIFE INSURANCE COMPANY,

Plaintiff, Appellant,

v.

DANIEL E. BROMBERG,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Lynch, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Joseph M. Hamilton, with whom Kristina H. Allaire, and Mirick, O'Connell, DeMallie & Lougee, LLP were on brief for appellant.
Ann L. Palmieri, with whom Law Office of Ann L. Palmieri was on brief for appellee.

August 30, 2004

**CYR**, <u>**Senior Circuit Judge**</u>. The Paul Revere Life Insurance Company ("Paul Revere") appeals a district court order which dismissed its declaratory judgment action against its insured, Daniel E. Bromberg, due to lack of subject matter jurisdiction. Bromberg was employed by Ascent Technologies ("Ascent") as a computer software engineer, from July 1999 to November 2000, during which time he participated in the Employee Security Plan ("Plan") established by Ascent. Moreover, it is undisputed that Paul Revere, pursuant to the Plan, issued individual disability insurance policies to Ascent employees and that the Plan was governed by the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461.

On November 15, 2000, Bromberg resigned from Ascent due to a job-related repetitive stress injury to his elbow, which prevented him from performing the required job functions (<u>e.g.</u>, typing). In January 2001, Bromberg began paying premiums to Paul Revere in order to continue his insurance coverage under the Plan policy. But Bromberg never applied to Paul Revere for a new non-Plan policy. In May 2001, Bromberg submitted a claim to Paul Revere, contending that the elbow injury had left him fully disabled. Paul Revere denied coverage, maintaining that Bromberg had made material misrepresentations in the July 1999 application for coverage under the Plan.

Subsequently, Paul Revere lodged its complaint in the

United States District Court for the District of Massachusetts, demanding a judicial declaration of non-coverage under the Plan. In turn, Bromberg moved to dismiss the complaint for lack of subject matter jurisdiction, on the ground that ERISA did not govern the May 2001 disability claim, due to the fact that, by that time, Bromberg was no longer covered by the Ascent Plan, but rather by his individually-funded, post-termination policy with Paul Revere. See Fed. R. Civ. P. 12(b)(1); 29 U.S.C. § 1132(e)(1).

The district court dismissed the complaint, and Paul Revere now appeals. As the predicate jurisdictional facts are not in dispute, the Rule 12(b)(1) dismissal for lack of subject matter jurisdiction is reviewed de novo. See Skwira v. United States, 344 F.3d 64, 71-72 (1st Cir. 2003), cert. denied, 124 S. Ct. 2836 (2004). The Paul Revere complaint for a judicial declaration of non-coverage invites a determination as to whether Bromberg was insured under the policy in effect at the time of the alleged injury.

The policies issued under the Plan constituted occurrence policies, viz., policies which (i) define "injury" as any "accidental bodily injury sustained after the date of issue and while your policy is in force," and (ii) provide that "[a]ll losses must occur while your policy is in force." See CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 46 F.3d 1211, 1221 (1st Cir. 1995) ("[A]n occurrence policy provides coverage for any

'occurrence' which takes place during the policy period."); DiLuglio v. New England Ins. Co., 959 F.2d 355, 358 (1st Cir. 1992). Bromberg acknowledged, in writing, as follows: "I resigned from Ascent on November 15th, 2000, and it was from this date exactly that I am claiming disability." As the job-related injury sustained by Bromberg occurred under the Plan policy, which plainly is governed by ERISA, see 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan"), the declaratory judgment action complaint adequately pled "federal question" jurisdiction.

Furthermore, the fact that Bromberg submitted his claim six months after resigning from Ascent, and after he had assumed individual responsibility for the premium payments, does not alter the fact that he was covered (if at all) only for an injury under the policy in effect on or before November 15, 2000. See Leahy v. Raytheon Co., 315 F.3d 11, 14 (1st Cir. 2002) (noting that former employee filed claim under ERISA plan six months after job furlough based on a pre-furlough injury); see also CPC Int'l, 46 F.3d at 1221 ("Under [an occurrence] policy it is irrelevant whether the resulting claim is brought against the insured during or after the policy period, as long as the injury-causing event happens during the policy period."). In fact, ERISA defines a Plan "participant" as including such former employees. See 29 U.S.C. § 1002(7).

The district court premised its Rule 12(b)(1) dismissal on our decision in Demars v. CIGNA Corp., 173 F.3d 443 (1st Cir.

-4-

1999).  However, in Demars the issue was whether ERISA applies to an individual policy to which the employee "converted" from the ERISA group policy after quitting her job.  Id. at 444.  We determined that ERISA was inapplicable to the individual policy because the employer's responsibility for administering and funding her coverage ended once its employee obtained the conversion policy.  Id. at 446.  However, unlike Bromberg, the injury for which Demars claimed coverage did not take place while the ERISA group plan policy remained in force, but after the conversion policy had come into effect.  See id. at 445 ("We review de novo the legal question whether ERISA preemption applies to claims arising from a conversion policy.") (emphasis added).

In other words, in Demars the claimant was not disabled at the time she quit CIGNA.  Instead, she continued to work in her own business for some three and one half years before filing a disability claim presumably related to a recently occurring medical condition.  See id. (noting that Demars "stipulated to the dismissal of her ERISA claim").  Therefore, Demars' covered injury plainly "arose from" (viz., during the term of) her individual conversion policy, which we held was no longer part of the ERISA plan coverage in effect before leaving CIGNA.

Indeed, the authorities cited by Demars involve cases – unlike Bromberg's – wherein the injuries giving rise to the insurance claims occurred after the effective dates of the

respective policies.  See Barringer-Willis v. Healthsource N.C., Inc., 14 F. Supp. 2d 780, 781 (E.D.N.C. 1998) (noting that covered injury occurred five years after conversion); Mizrahi v. Provident Life and Accident Ins. Co., 994 F. Supp. 1452, 1453 (S.D. Fla. 1998) (four months after conversion); Powers v. United Health Plans of New England, Inc., 979 F. Supp. 64, 65 (D. Mass. 1997) (five months after conversion); Mimbs v. Commercial Life Ins. Co., 818 F. Supp. 1556, 1558 (S.D. Ga. 1993) (one month after conversion); see also McCale v. Union Labor Life Ins. Co., 881 F. Supp. 233, 234(S.D. W. Va. 1995) (noting that insured's death postdated conversion of life insurance policy).  Moreover, subsequent cases which have adopted the Demars rationale all involve such post-conversion injuries.  See, e.g., Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872, 874 (9th Cir. 2001) (three years after conversion); Owen v. UNUM Life Ins. Co., 285 F. Supp. 2d 778, 780 (E.D. Tex. 2003) (eleven years after conversion).

As Demars is legally, as well as factually, inapposite to the Paul Revere complaint for a declaration of non-coverage, the district court erred in granting the Rule 12(b)(1) dismissal.

**Reversed and remanded**.